UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

STEVEN R. WHEELER,                          )
                                            )
            Plaintiff,                      )
                                            )
v.                                          ) Case No. 11-CV-0366-CVE-FHM
                                            )
MICHAEL J. ASTRUE,                          )
Commissioner of Social Security,            )
                                            )
            Defendant.                      )

# OPINION AND ORDER

Now before the Court is the Report and Recommendation (Dkt. # 18) of Magistrate Judge Frank H. McCarthy recommending that the Court affirm the Commissioner's decision to deny plaintiff's claim for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). Plaintiff has filed an objection to the report and recommendation, seeking a remand of the case for further administrative proceedings. Dkt. # 19. Defendant has not responded to plaintiff's objection, and the time to respond has expired.

## I.

Plaintiff Steven Roy Wheeler was born in November 1966 and resides with his parents. Dkt. # 14-6, at 5, 42. Plaintiff completed the twelfth grade, and he worked as a laborer and carpenter prior to filing for SSI. Id. at 15, 19. Plaintiff initially filed an application for SSI in December 2006, which was denied on March 6, 2007. Dkt. # 14-3, 4-5. Plaintiff again filed an application for SSI on September 27, 2007, and he alleged onset of disability on March 7, 2007. Id. at 2-3. Plaintiff's claim was denied in May 2008, and the denial was affirmed on reconsideration in June 2008. Id. In October 2008, plaintiff filed a request for a hearing, which was granted. Dkt. # 14-4, at 11.

On October 6, 2009, administrative law judge Richard J. Kallsnick (ALJ) held a hearing, at which plaintiff was represented by counsel. Dkt. # 14-2, at 29. A supplemental hearing was held on May 4, 2010 before the ALJ, where plaintiff was again represented by counsel. Plaintiff testified that he stopped working when he "started getting sick," but that no medical test found any reason for his sickness. Id. at 33. Plaintiff's attorney, in questioning plaintiff, stated that plaintiff's last day of work was in May 2004, and the alleged onset of disability was in March 2007. Id. at 34. Plaintiff could not remember exactly when he last worked, but he testified that he stopped working because he had a pain in his side, became dizzy, and his hands started to shake. Id. at 35. Plaintiff further testified that he did not have any physical problem, but that he believed it was all emotional. Id. at 36. Plaintiff also stated that he had trouble concentrating and that he just did not "feel well all the time." Id. at 36.

Plaintiff testified that his daily activities include watching a little television or mowing the yard for a short while once every two or three weeks. Id. at 36. He can watch only about 30 minutes of television at a time before losing interest, and it had been two to three years since he participated in his old hobbies, either fishing or playing basketball. Id. at 37. Plaintiff fixes his own sandwiches and washes his own clothes. Id. at 62. He visits his brother and a friend every once in awhile, but otherwise he does not see anyone except his parents. Id. at 39-40. Plaintiff further testified that the hearing before the ALJ was very stressful, but the Abilify he was taking did help with his stress overall. Id. at 41. Plaintiff testified the only side effect he experienced from his medications was that the Abilify made his leg "bounce up and down," but that his doctors added additional medications to help with that symptom. Id. at 42. Plaintiff also testified that he does not notice a

2

difference when he does not take his medications but his mother will comment that he is sicker and complains more. Id. at 59.

Plaintiff testified that the onset of his disability was gradual, and he estimated that it started in about 1999 and got worse through about 2004. Id. at 42. Plaintiff also stated that he stopped working 40 hours or more a week because his "home situation changed." Id. Prior to the supplemental hearing, plaintiff was examined by consultative examiner Minor W. Gordon, Ph.D., and Dr. Gordon found that plaintiff had a moderate limitation in his ability to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions. Dkt. # 14-9, at 319. Although not discussed at either hearing, plaintiff's treating physician, Brett M. Gray, M.D., opined that plaintiff did not have a mental condition that imposes more than a minimal limitation. Dkt. # 14-8, at 3.

At the supplemental hearing, plaintiff testified that he attempted to work three to four years before, but that he went home after a half day. Dkt. # 14-2, at 52. Plaintiff stated that, when he tries to force himself to work, he gets "physically sick." Id. at 53. When asked to explain what he meant by "physically sick," plaintiff stated that he gets light-headed, breaks out in sweats, and feels bad. Id. at 56. He also stated that he was seeing a counselor at the Indian Health Clinic in Salina. Id. at 53, 56. However, plaintiff had not seen that counselor since November 23, 2009, which was approximately six months prior to the hearing. Id. Plaintiff stated that he could not recall all of the medications he was taking, but he knew that he was taking Abilify, Buspirone, and Raniditine. Id. at 57-58. Additionally, plaintiff gets the prescription for Abilify from his regular doctor at the Salina clinic, and he continues to go to the clinic every three months. Id. at 58.

3

The ALJ called vocational expert (VE) Michael J. Wiseman to testify about the requirements of plaintiff's past work and the availability of jobs in the marketplace that could be performed by a person with plaintiff's mental limitations. The ALJ asked a hypothetical question based on plaintiff's age, education, and mental abilities, which included anxiety-related disorder limitations. Id. at 65-66. The VE testified that plaintiff could not return to any of his past relevant work because plaintiff's past work was performed at the heavy level. Id. at 66. The VE testified that, at step five, there was unskilled work that plaintiff could perform, including janitor, bench assembler, housekeeper, clerical mailer, and semi-conductor assembler. Id. at 66-67. The VE testified that the ALJ had not failed to address any vocationally relevant factors in his hypothetical. Id. at 67. The ALJ posed a second hypothetical with the same basic factors, except asking the VE to assume that all of plaintiff's testimony was credible and verifiable. Id. at 67-68. The VE testified that, with such limitations, like the "inability to deal with normal stressors" or "decompensation upon any stress at all," plaintiff could not perform any of the aforementioned jobs or any of his past work. Id. The VE further testified that an individual with plaintiff's limitations, if all were accepted as credible and verifiable, would be "unable to complete a normal workday or workweek." Id. at 68.

On May 18, 2010, the ALJ issued a written decision denying plaintiff's claim for SSI. The ALJ determined that plaintiff's major depression and anxiety disorder was a severe impairment. Dkt. # 14-2, at 13. The ALJ noted that plaintiff's major depression and anxiety cause a "significant limitation" in plaintiff's ability to perform basic work activities. Id. The ALJ found that plaintiff's alleged impairments due to bronchitis and stomach pain were non-severe because plaintiff's evidence established that these impairments would have only a "minimal effect" on plaintiff's ability to work. Id. The ALJ also noted that plaintiff does not have "an impairment or combination of

impairments that meets or medically equals one of the listed impairments." Id. To make this finding, the ALJ considered the "paragraph B" criteria. Id.; 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1204.

The ALJ noted that a mental impairment, to satisfy "paragraph B" criteria, must result in at least two of the following: "marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." Dkt. # 14-2, at 13; 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1204. Because plaintiff watches television, does his own laundry, attends to his own hygiene, visits family and a friend, walks the dog each day, shops with his mother, and prepares simple meals, the ALJ found that plaintiff had only a mild restriction in his daily living activities. Dkt. # 14-2, at 14. Second, the ALJ found that plaintiff has moderate difficulties with both social function and "concentration, persistence, or pace." Id. Again, the ALJ recounted plaintiff's daily activities and added that, according to plaintiff's own statement on his Function Report-Adult, plaintiff had trouble following written instructions but he could follow spoken instructions. Id. Finally, the ALJ noted that plaintiff had no episodes of decompensation. Therefore, since plaintiff did not have at least two of the limitations required, he did not satisfy the "paragraph B" criteria. Id.; 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1204. The ALJ considered whether "paragraph C" criteria were satisfied. Dkt. # 14-2, at 14. Again, the ALJ determined that plaintiff's mental impairments did not meet the criteria. Further, the ALJ stated that the limitations in "paragraph B" criteria are not an RFC assessment but are instead used at steps 2 and 3 of the evaluation. Id.

The ALJ determined that plaintiff has the residual functional capacity (RFC) to perform medium work. Id. at 14-15. The ALJ also found that plaintiff is unable to relate to the general

public but is able to adapt to work situations. Id. The ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but the ALJ did not find plaintiff's claims entirely credible. Id. at 16. Therefore, he determined that plaintiff was not disabled. Id. at 20-21.

To make the RFC finding, the ALJ followed a two-step process. Id. at 15. First, the ALJ determined "whether there is an underlying medically determinable physical or mental impairment[ ] . . . that could reasonably be expected to produce [plaintiff's] pain or other symptoms." Id. Second, the ALJ evaluated "the intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which they limit the [plaintiff's] functioning." Id. To make this finding, the ALJ considered objective medical evidence and made a credibility finding regarding any statements that were not "substantiated by objective medical evidence." Id.

Initially, the ALJ summarized plaintiff's testimony from both hearings. Id. at 15-16. The ALJ included plaintiff's testimony regarding his appointment at the "Salina Clinic every three months for medications for his mental condition" and the fact that plaintiff also sees a counselor at the clinic. Id. at 15. Additionally, the ALJ included plaintiff's testimony about his daily activities and depression. Id. at 15-16. The ALJ also took note of plaintiff's Function Report-Adult, which plaintiff completed in October of 2007, detailing his daily activities and other mental impairments, including not being able to follow written instructions very well and needing "reminders to bathe, groom and take medication." Id. at 16; Dkt. # 14-6, at 5-12. After considering plaintiff's testimony and the Function Report-Adult, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that plaintiff's "statements

6

concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's RFC. Dkt. # 14-2, at 16.

The ALJ reviewed the medical evidence of plaintiff's mental impairments. Id. The ALJ noted that plaintiff saw Dr. Gray for mental health impairments at the Salina clinic. Id. Further, Dr. Gray completed a form in February 2007, the Treating Physician Mental Functional Assessment Questionnaire, and noted that he was treating plaintiff for a mental condition but the condition "did not impose more than a minimal limitation." Id.; Dkt. # 14-8, at 2-3. The ALJ reviewed plaintiff's medical records. Dkt. # 14-2, at 16-17; see Dkt. # 14-9. First, the ALJ noted plaintiff reported "improvement in depression and anxiety with medication," that he was "feeling better since starting his medications," and that he was "doing pretty good now and the Abilify was working fine for him." Dkt. # 14-9, at 8, 27, 41, 70. The ALJ discussed visits with the doctor ranging from September 2007 through August 2009. Id. at 8, 22, 27, 41, 44, 65, 70. The ALJ made specific mention of visits when plaintiff's mental impairments seemed to worsen. Id. at 44, 65. Further, the ALJ noted that plaintiff's diagnosis was changed on January 13, 2006 to generalized anxiety disorder and bipolar disorder. Id. at 22.

The ALJ reviewed Dr. Gordon's psychological examination and the Medical Source Statement of Ability to do Work-Related Activities (Mental), which Dr. Gordon completed. Dkt. # 14-2, at 17; Dkt. # 14-9, at 319. The ALJ noted that Dr. Gordon found plaintiff had "moderate limitations in his abilities to understand, remember and carry out complex instructions, make judgments on complex work-related decisions, and respond appropriately to usual work situations." Dkt. # 14-2, at 17; Dkt. # 14-9, at 319. Dr. Gordon's completed form also stated that plaintiff had only "mild limitations in his abilities to understand, remember and carry out simple instructions and

7

interact appropriately with the public, supervisors and co-workers." Dkt. # 14-2, at 17; Dkt. # 14-9, at 319-320. The ALJ further noted that Dr. Gordon diagnosed plaintiff with "major depression, moderate to severe, without psychotic symptoms, and moderate anxiety, not otherwise specified." Dkt. # 14-2, at 17; Dkt. # 14-9, at 318-320. Dr. Gordon gave plaintiff a global assessment of functioning score of 55, which indicates "moderate difficulty in social, occupational, or school functioning." Dkt. # 14-2, at 17; Dkt. # 14-9, at 318. In his written opinion, the ALJ stated that he gave Dr. Gordon's opinion "substantial weight," and, additionally, he noted Dr. Gordon's opinion was not as limiting as the residual functional capacity" in the ALJ's decision. Dkt. # 14-2, at 17.

The ALJ took administrative notice of plaintiff's attorney's objections to Dr. Gordon's report. Id. at 18. The ALJ also noted that the State Disability Determination Services (DDS) RFC assessment[1] supported a finding of not disabled, but the ALJ also noted that because the DDS physician was non-examining, the opinion did not deserve as much weight as that of an examining or treating physician. Id. The ALJ stated that the record contains no evidence from an examining or treating physician that indicates plaintiff is disabled. Id. The ALJ again mentioned Dr. Gray's opinion that plaintiff's "mental condition did not impose more than a minimal limitation." Id.; Dkt. # 14-8, at 3. Further, the ALJ noted that plaintiff's condition appeared to have improved with medication or remained stable. Dkt. # 14-2, at 18. The ALJ repeated plaintiff's own statements as of December 2008 and August 2009 that he was "doing pretty good" and that he was "doing okay." Dkt. # 14-2, at 18; Dkt. # 14-9, at 8, 27.

---

[1] The record reflects that a mental RFC assessment was completed by Carolyn Goodrich, Ph.D., Dkt. # 14-7, at 275, and that a physical RFC assessment was completed by J. Marks-Snelling, D.O., M.P.H., Dkt. # 14-7, at 279. Hereinafter, the combined assessments will be referred to as the DDS opinion.

8

The ALJ explained in his written decision why the medical evidence from Dr. Gordon, Dr. Gray, and the DDS opinion did not weigh in favor of a finding of disability. Dkt. # 14-2, at 18. First, the ALJ noted that plaintiff has not "received the type of medical treatment one would expect for a totally disabled individual," which included plaintiff's own statement that he had not seen his counselor for about six months prior to the hearing. Id. Second, the ALJ stated that two further factors led him to find that plaintiff's daily activities were not as limited as plaintiff claimed: there was no objective verification of plaintiff's claims that he had such limited daily activities; and there was weak medical evidence supporting plaintiff's claims that his limited daily activities were directly attributable to his medical condition. Id. The ALJ again noted all of the daily chores plaintiff does for himself, including walking the dog and preparing simple meals. Id. Further, the ALJ noted that plaintiff's daily activities do not include household chores; however, the ALJ took note this was likely because plaintiff lives with his parents, who do not require him to perform such daily chores. Id.

The ALJ also reviewed plaintiff's work history. Id. at 19. The ALJ stated that plaintiff's work history was sporadic prior to the alleged disability, and plaintiff's earnings records show plaintiff has not worked since 1995. Id. Although plaintiff testified that he was self-employed and that he last worked three to four years before, the ALJ said he found it "difficult to determine the date [plaintiff] actually ceased working." Id. The ALJ also noted that plaintiff stated he did not work as many hours after his "home situation changed." Id. Finally, the ALJ made note that plaintiff "undoubtedly [has] some difficulties;" however, the ALJ, taking into account the objective medical evidence of plaintiff's mental limitations, found plaintiff's RFC assessment to be reasonable and that plaintiff could function within those limitations. Id.

9

Plaintiff appealed the ALJ's decision, and the appeal was denied. Id. at 2, 7. Plaintiff filed this case seeking judicial review of the Commissioner's denial of his request for SSI, and his opening brief asserted one argument: the ALJ disregarded Dr. Gordon's opinion insofar as it conflicted with the ALJ's RFC assessment. Dkt. # 15, at 5. The matter was referred to a magistrate judge for a report and recommendation, and the magistrate judge recommended that the Commissioner's decision be affirmed. Dkt. # 18. Plaintiff objected to the magistrate judge's report and recommendation on five grounds, including that the magistrate judge failed to follow circuit precedent, the magistrate judge relied on stale evidence, the consultative examiner's opinion was inconsistent with the ALJ's determination, the magistrate judge failed to distinguish this case from circuit precedent, and the ALJ's disregard of the consultive examiner's opinion was not harmless error. Dkt. # 19. However, each of plaintiff's objections is based on an overarching claim, under Haga v. Astrue, 482 F.3d 1205 (10th Cir. 2007), that the ALJ improperly discounted the medical opinion of the consultative examiner, Dr. Gordon, which conflicted with the ALJ's RFC findings, and that the ALJ did so without explanation.

## II.

Without consent of the parties, a court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §

636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

### III.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [*Allen v. Barnhardt*, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of his past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

If there is substantial evidence to support the Commissioner's finding, then the Commissioner's decision is final. Richardson v. Perales, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)). More specifically, simply because the ALJ could have drawn "two inconsistent conclusions from the evidence" does not conclusively show the ALJ's decision is not supported by substantial evidence. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). A court shall not displace an ALJ's "choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Id. It is not this Court's job to reweigh the evidence but only to consider the sufficiency of the evidence. Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The magistrate judge acknowledged the three separate medical opinions of Dr. Gray, Dr. Gordon, and the DDS, and he noted that the ALJ did not fail to discuss any of the three opinions.

Dkt. # 18, at 4. Rather, the magistrate judge noted that the ALJ specifically mentioned Dr. Gray's opinion, and that the ALJ specifically stated that he gave Dr. Gordon's opinion great weight while only giving the DDS opinion some weight. Id. at 4-5. Plaintiff argues, however, that the ALJ's RFC is contrary to Dr. Gordon's opinion. Dkt. # 15, at 7-8; Dkt. # 17. Further, plaintiff argues that Haga controls this case and requires reversal. Dkt. # 15, at 7-8; Dkt. # 17.

Plaintiff testified he was unable to make himself work, and if he did, he would be sick for days. Dkt. # 14-2, at 53-54. Plaintiff also testified that he saw a counselor, took medication for depression, and he spent a lot of his days in bed. Dkt. # 14-2, at 54. The administrative record contains three medical opinions, and it is clear the ALJ was aware of all three medical opinions. Specifically, the ALJ made note of each opinion regarding plaintiff's mental abilities. Dkt. # 14-2, at 16-18. The ALJ stated in his written opinion that he gave "Dr. Gordon's opinion substantial weight as he examined the claimant and this opinion is based upon the objective medical findings and signs." Id. at 17. The ALJ also noted the DDS opinion was non-examining and did not deserve as much weight as those of an examining or treating physician. Id. at 18. However, the ALJ fully explained why, despite Dr. Gordon's opinion that the plaintiff had "moderate" mental limitations, plaintiff is not disabled, including why both Dr. Gray and the DDS opinion were entitled to some weight. Id. at 16-19.

The Court has independently reviewed the medical evidence in the administrative record, and finds that there is evidentiary support for plaintiff's testimony that he suffered from anxiety and depression that hindered his ability to work. However, despite plaintiff's arguments that a mild or moderate limitation is not the same as no limitation, the limitations noted by the ALJ and in the administrative record are not a per se disability. As noted by the magistrate judge, a "moderate"

13

limitation does not preclude activity and may not necessarily impact the ALJ's RFC determination. Dkt. # 18, at 3. "Moderate" is defined on the form used by Dr. Gordon as: ". . . more than a slight limitation in this area but the individual is still able to function satisfactorily." Dkt. # 14-9, at 319. The Court will address plaintiff's five objections to the report and recommendation, and make a <u>de novo</u> determination of those portions to which objection is made.

**A.**

Plaintiff's first objection is that the magistrate judge failed to follow <u>Haga</u>, instead relying on <u>Clifton v. Chater</u>, 79 F.3d 1007 (10th Cir. 1996). Dkt. # 19, at 2. In <u>Clifton</u>, the Tenth Circuit held that the ALJ was required to discuss the evidence and explain why he found that claimant was not disabled. <u>Id.</u> at 1007. The circuit court found that the ALJ "merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment." <u>Id.</u> at 1009. The Tenth Circuit expanded on that holding in <u>Haga</u>, which is the case plaintiff argues must control this decision. In <u>Haga</u>, a consultive examiner marked plaintiff as moderately impaired in seven of ten categories on an RFC form. The ALJ's RFC determination took into account several of the impairments while seemingly discounting others, and the ALJ gave no explanation why some restrictions were rejected while others were not. <u>Id.</u> Remand was required because the ALJ cannot "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability[,]" and the ALJ should have explained why some of the consultive examiner's moderate limitations were rejected while some were accepted. <u>Id.</u> at 1208.

Although plaintiff is correct that <u>Haga</u> contains similar facts to this case, <u>Haga</u> is not directly on point. Dr. Gordon's finding was not uncontradicted. Plaintiff's treating physician, Dr. Gray, noted that plaintiff's condition did not impose more than a minimal limitation. Dkt. # 14-8, at 3.

14

Further, the DDS opinion was that plaintiff did not have a significant limitation in his ability to respond to changes in his work setting.[2] Dkt. # 14-7, at 275-277; Dkt. # 14-8, at 66-68. These two opinions contradict Dr. Gordon's finding of a "moderate" limitation, and, therefore, Dr. Gordon's opinion is not uncontradicted. The Court finds that the magistrate judge properly applied Clifton, and Haga to the extent it was applicable.

**B.**

Plaintiff's second objection is that the magistrate judge relied on "stale" evidence.[3] Dkt. # 5, at 4. Relying on Chapo v. Astrue, 682 F.3d 1285 (10th Cir. 2012), plaintiff argues that Dr. Gray's report is "stale" in comparison with Dr. Gordon's, and that the magistrate judge should have discounted Dr. Gray's opinion in favor of the more recent assessment of Dr. Gordon. Dr. Gray opined that plaintiff did not have "a mental condition that impose[d] more than a minimal limitation" by checking a box on a form. Dkt. # 14-8, at 3. The form was dated February 14, 2007, which was three weeks prior to the alleged onset of disability.

---

[2] The form used for the DDS opinion allowed the reviewer to choose among five boxes: not significantly limited; moderately limited; markedly limited; no evidence of limitation in this category; and not ratable on the evidence available. Dkt. # 14-7, at 275.

[3] Plaintiff also reargues that Dr. Gordon's opinions were not uncontradicted and that reliance on an opinion is misplaced if the physician simply "checked a box." Dkt. # 19, at 4-5. This Court previously found that Dr. Gordon's opinion was not uncontradicted. See supra Part III.A. Further, Dr. Gray's opinion was not based on simply checking boxes; instead, he was plaintiff's treating physician, which allowed the ALJ to give greater weight to Dr. Gray's opinion than if it were simply a checked box by an agency physician. See Anderson v. Astrue, 319 Fed. Appx. 712, 723 (10th Cir. 2009) (limiting Tenth Circuit precedent that "check-box" forms are of "suspect reliability" to forms completed by "nontreating physicians") (citations omitted) (unpublished); see also Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2011) (noting evaluation forms "'based on the most limited sort of contact and examination. . . unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.'" (quoting Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987))).

15

In Chapo, the Tenth Circuit noted that it was "troubling" when the medical evidence relied upon by the ALJ pre-dated the ALJ's decision by twenty months, in which time the "medical record obviously underwent material changes," including an MRI that revealed obvious physical limitations beyond those in the physician's report. 682 F.3d at 1292-93. However, the circuit court did "not make a definitive determination on [that] question," but instead "encourage[d] the ALJ to obtain an updated exam or report." Id. at 1293.

In this case, the ALJ took note of the date of each examination and report from a physician, and the ALJ also reviewed medical records from September 2007 through August 2009. Dkt. # 14-2, at 16-17. Further, it is unlikely plaintiff's mental limitations changed significantly between February 14, 2007 and March 7, 2007. Even assuming Dr. Gray's opinion should be accorded less weight because it predates the alleged onset date, the ALJ specifically noted that "the record indicates the claimant has improved with medication or has remained stable" since Dr. Gray's assessment. Dkt. # 14-2, at 18. The ALJ did not give Dr. Gray's opinion controlling weight but, instead, looked to the DDS opinion that plaintiff is "not disabled," as well as plaintiff's medical records dated after the alleged onset, before concluding plaintiff was not disabled. Id. The magistrate judge did not rely on stale evidence.

## C.

Plaintiff's third objection is that the magistrate judge erred in concluding that the ALJ's findings were consistent with Dr. Gordon's opinion. Dkt. # 19, at 6. Plaintiff again relies on Haga and argues that the magistrate judge failed to follow this precedent. The Tenth Circuit, however, has clearly stated that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."

16

Chapo, 682 F.3d at 1288. Further, in the areas the ALJ's RFC assessment found plaintiff had the ability to perform certain tasks, including "get along with co-workers and supervisors" and "understand, remember and carry out simple instructions," (Dkt. # 14-2, at 14-15), Dr. Gordon found plaintiff's limitations were "mild" (Dkt. # 14-9, at 320). The form used by Dr. Gordon defines "mild" as "[t]here is a slight limitation in this area, but the individual can generally function well." Dkt. # 14-9, at 319. Therefore, the ALJ could find that Dr. Gordon's opinion that plaintiff could "function well" in that area meant plaintiff had the RFC to perform those tasks. Dr. Gordon's finding that plaintiff had a "moderate limitation" in his ability to adapt (Dkt. # 14-9, at 320) is also not in direct conflict with the ALJ's RFC assessment that plaintiff has the "ability to adapt to work conditions" (Dkt. # 14-2, at 15). On the form used by Dr. Gordon, "moderate" is defined as "[t]here is more than a slight limitation in this area but the individual is still able to function satisfactorily." Dkt. # 14-9, at 319. On its face, Dr. Gordon's finding does not preclude a finding that plaintiff has the ability to adapt to work conditions because the definition clearly states that "individual is still able to function satisfactorily." The ALJ specifically mentioned Dr. Gordon's assessment of a "moderate" limitations in certain areas and noted he gave Dr. Gordon's opinion "substantial weight." Dkt. # 14-2, at 17.

Finally, while plaintiff is correct that a finding that plaintiff has a "mild" limitation is not the same as a finding that plaintiff has no limitation, Dorman v. Astrue, 368 Fed.Appx. 864 (10th Cir. 2010) (unpublished),[4] the ALJ in this case carefully set out his findings and the weight he gave each medical opinion. In Dorman, the Tenth Circuit held that where the ALJ and VE completely failed

---

4   Unpublished decisions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

to consider any evidence of the mental demands of the plaintiff's past work, the record lacked substantial evidence and remand was required. Id. at 865-66. In this case, the ALJ fully reviewed the record and weighed all the evidence, including a description of job duties which would produce tension or anxiety for plaintiff. Despite plaintiff's objection, the ALJ is not required to align his RFC assessment with the medical opinion denoting the greatest mental limitations. Therefore, this Court finds that the magistrate judge did not err in concluding the ALJ's RFC assessment and Dr. Gordon's opinion were consistent.

## D.

Plaintiff's fourth objection is that the magistrate judge erred in distinguishing plaintiff's case from Haga based upon the number of inconsistencies between Dr. Gordon's opinion and the ALJ's decision. Dkt. # 19, at 6. Plaintiff is correct that Haga does not demand a certain number of inconsistencies between a medical opinion and the ALJ decision. However, as discussed above, supra Part III.A., Haga instead holds that an ALJ must explain why he rejects some and accepts other restrictions in a mental health professional's RFC assessment if that mental health professional is uncontradicted. The magistrate judge noted this distinction and noted that Dr. Gordon's opinion was not uncontroverted. See id. This court finds that the magistrate judge did not err and that this case is distinct from Haga because Dr. Gordon's opinion was not uncontroverted.

## E.

Plaintiff's fifth objection is that the "ALJ's selective disregard of Dr. Gordon's opinion was not harmless error." Dkt. # 19, at 7. Plaintiff contends that "a reasonable adjudicator could have found that Dr. Gordon's opinion that [plaintiff] had moderate limitations. . . showed his ability to make the adjustment to alternative work he had never performed before was impaired." Id. Plaintiff

argues that, because a reasonable ALJ may have made a different decision based on the evidence and Haga, the ALJ's "selective disregard of Dr. Gordon's opinion" in his RFC assessment was not harmless.

The Tenth Circuit "appl[ies] harmless error analysis cautiously in the administrative review setting." Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). Harmless error analysis may be appropriate if "based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). If harmless error analysis is "too liberally embraced, it could obscure the important institutional boundary. . . [that] courts avoid usurping the administrative tribunal's responsibility to find the facts. Second. . . it risks violating the general rule against post hoc justification of administrative action." Id. (citing SEC v. Chenery Corp., 318 U.S. 80 (1943)).

The Tenth Circuit has discussed harmless error analysis in social security disability cases. Id. For example, the Tenth Circuit found, in Gay v. Sullivan, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993), that a minor technical error was not enough to "undermine confidence in the determination of th[e] case." Harmless error was also used when an "'ALJ's conduct, although improper, d[id] not require reversal' because the procedural impropriety involved had not 'altered the evidence before the ALJ.'" Allen, 357 F.3d at 1145 (citing Glass v. Shalala, 43 F.3d 1392, 1396-97 (10th Cir. 1994)).

In this case, The ALJ did not fail to discuss any of the three medical opinions. Nor did the ALJ fail to give reasons for accepting some opinions while rejecting others. Further, the ALJ did not pick and choose among one doctor's findings, as was the case in Haga. 482 F.3d at 1208. In

fact, the ALJ specifically stated that he would give Dr. Gordon's opinion greater weight than the DDS opinion. Dkt. # 14-2, at 17.

The ALJ followed the proper procedure and weighed all the evidence in the record, including the opinion of Dr. Gordon. The standard is not, as plaintiff contends, that a "reasonable adjudicator could have found" differently than the ALJ, but it is, instead, whether "no reasonable administrative factfinder, following the correct analysis, could have resolved the matter in any other way." <u>Allen</u>, 357 F.3d at 1145. This Court finds the harmless error analysis is not appropriate in this case, and, even if it were applied, any error in the ALJ's analysis was harmless.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 18) is **accepted**. The Commissioner's decision to deny plaintiff's claim for disability benefits and supplemental security income is **affirmed**. A separate judgment is entered herewith.

**DATED** this 17th day of September, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE